IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 22-_____ |
| v. | : | VIOLATIONS: |
| | | 18 U.S.C. § 1344 (bank fraud – 1 count) |
| STEVEN BALL-VAUGHN | : | 18 U.S.C. § 641 (theft of government |
| | | money – 2 counts) |
| | : | Notice of forfeiture |

## INDICTMENT

## COUNT ONE

### (Bank Fraud)

**THE GRAND JURY CHARGES THAT**:

At all times material to this indictment:

1.      Defendant STEVEN BALL-VAUGHN was a United States citizen, with a last known address in Oreland, Pennsylvania.

2.      Vaughn Investment Group, LLC ("Vaughn Investment Group") was a Pennsylvania limited liability company formed in or around 2018. Vaughn Investment Group purportedly operated as a real estate development company.

3.      Centric Bank was a financial institution headquartered in Harrisburg, Pennsylvania and insured by the Federal Deposit Insurance Corporation ("FDIC") with FDIC certificate number 7416. Centric Bank processed a PPP application for Vaughn Investment Group, approved the application, and paid funds on that application.

4.      Bank of Princeton was a financial institution headquartered in Princeton, New Jersey and insured by the Federal Deposit Insurance Corporation ("FDIC") with FDIC certificate number 58513. Bank of Princeton processed a PPP application for VAUGHN INVESTMENT GROUP, approved the application, and paid funds on that application.

5.     Northeast Bank was a financial institution headquartered in Portland, Maine and insured by the Federal Deposit Insurance Corporation ("FDIC") with FDIC certificate number 19690. Northeast Bank processed a PPP application for Vaughn Investment Group, approved the application, and paid funds on that application.

6.     Navy Federal Credit Union was a financial institution headquartered in Vienna, Virginia. Defendant STEVEN BALL-VAUGHN holds a personal bank account at Navy Federal Credit Union as well as a bank account under the name of Vaughn Investment Group, LLC for which he is the sole signatory.

### The Small Business Administration

7.     The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy in a variety of ways, including by fostering the establishment and viability of small businesses and aiding in their economic recovery after community disasters.

8.     As part of its efforts, the SBA provided for business loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

### The CARES Act and Paycheck Protection Program

9.     The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

10.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application

signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make affirmative certifications to be eligible for the PPP loan. For example, in the PPP loan application (SBA Form 2483), the business, through its authorized representative, had to state its average monthly payroll expenses and number of employees. In addition, businesses had to provide documentation showing their payroll expenses, as part of the PPP loan application process. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

11.     Once a qualifying business completed a PPP application, a participating lender processed the application. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed. In the course of processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees.

12.     Proceeds from a PPP loan were legally required to be used only for certain permissible business expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness, if the business spent the loan proceeds on permissible items within a designated period of time and used a certain portion of the loan toward payroll expenses.

**The Scheme to Defraud**

13.     From on or about May 5, 2020, through on or about July 1, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

**STEVEN BALL-VAUGHN**

knowingly executed and attempted to execute a scheme and artifice to defraud Bank of Princeton, Centric Bank, and Northeast Bank and to obtain money and property under the care, custody and control of Bank of Princeton, Centric Bank, and Northeast Bank by means of materially false and fraudulent pretenses, representations, and promises.

14.     The purpose of the scheme was for defendant STEVEN BALL-VAUGHN to enrich himself by fraudulently obtaining PPP loan proceeds, including by making false statements about the purported business activities of VAUGHN INVESTMENT GROUP, the business income of VAUGHN INVESTMENT GROUP, and the intended use of the PPP loan proceeds.  Once he obtained those PPP loan proceeds, defendant BALL-VAUGHN caused those funds to be spent on unauthorized purchases.

**Manner and Means**

It was part of the scheme that:

15.     On or about May 5, 2020, defendant STEVEN BALL-VAUGHN caused a false and misleading PPP loan application to be submitted to Centric Bank, in the name of Vaughn Investment Group, seeking approximately $20,618 in PPP funds ("the Centric Bank PPP Application").  The Centric Bank PPP Application contained purported income data and documentation regarding Vaughn Investment Group that, if true and accurate, would have supported a loan request of $20,618. Defendant BALL-VAUGHN signed the Centric Bank PPP Application and falsely certified that both the application and the information provided in the supporting documents were true and accurate.

4

16.     The information that defendant STEVEN BALL-VAUGHN caused to be submitted with the Centric Bank PPP Application falsely represented the income of the Vaughn Investment Group. To support this false income statement, defendant BALL-VAUGHN submitted a fraudulent IRS form 1040C from the year 2019 which stated that the Vaughn Investment Group received income which would entitle it to a PPP loan in the amount of $20,618, when in fact neither the Vaughn Investment Group nor defendant BALL-VAUGHN filed a 1040C in 2019 or in any year.

17.     After the Centric Bank PPP Application was approved, on or about June 19, 2020, defendant STEVEN BALL-VAUGHN received approximately $20,618 through a wire transfer sent to an account for Vaughn Investment Group at Centric Bank.

18.     Between on or about June 19, 2020 and September 1, 2020 defendant STEVEN BALL-VAUGHN caused PPP loan proceeds from the Vaughn Investment Group account at Centric Bank to be transferred to a Vaughn Investment Group account at Navy Federal Credit Union. Thereafter, the transferred funds were used for personal and unauthorized expenses, including at grocery stores, restaurants, electronics stores, and gambling sites.

19.     On or about March 31, 2021, defendant STEVEN BALL-VAUGHN caused a false and misleading PPP loan application to be submitted to Bank of Princeton seeking approximately $20,833 in PPP funds ("the Bank of Princeton PPP Application"). The Bank of Princeton PPP Application contained purported income data and documentation regarding Vaughn Investment Group that, if true and accurate, would have supported a loan request of $20,833. Defendant BALL-VAUGHN signed the Bank of Princeton PPP Application and falsely certified that both the application and the information provided in the supporting documents were true and accurate.

20.     The information that defendant STEVEN BALL-VAUGHN caused to be submitted with the Bank of Princeton PPP Application falsely represented the income of the Vaughn Investment Group. To support this false income statement, defendant BALL-VAUGHN submitted a fraudulent IRS form 1040C for the year 2019 which stated that the Vaughn Investment Group received income which would entitle it to a PPP loan in the amount of $20,833, when in fact neither the Vaughn Investment Group nor defendant BALL-VAUGHN filed a 1040C in 2019 or in any year. Defendant BALL-VAUGHN also submitted a fraudulent 1099-MISC form claiming that he personally had earned income from Company 1 in Plant City, Florida, when in fact the tax identification number given for Company 1 on the 1099-MISC did not exist and the business address given for Company 1 was a vacant lot.

21.     In the Bank of Princeton PPP Application, defendant STEVEN BALL-VAUGHN further certified that the PPP loan proceeds "would be used for payroll costs, covered operations expenses, and covered suppliers costs, as specified under the Paycheck Protection Program Rule." He further certified that he understood that "if the funds [were] knowingly used for unauthorized purposes, the federal government may hold [him] legally liable, such as for charges of fraud." Likewise, he affirmed that the information he provided "in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and further affirmed that knowingly making a false statement to obtain a PPP loan could result in imprisonment, or fines, or both. These same certifications were contained in each PPP loan application submitted by defendant BALL-VAUGHN.

22.     After the Bank of Princeton PPP Application was approved, on or about April 7, 2021, defendant STEVEN BALL-VAUGHN received approximately $20,833 through a wire transfer sent to an account for Vaughn Investment Group at Bank of Princeton.

23.     On or about April 2, 2021, defendant STEVEN BALL-VAUGHN caused a false and misleading PPP loan application to be submitted to Northeast Bank, in the name of Vaughn Investment Group, seeking approximately $20,832 in PPP funds ("the Northeast Bank PPP Application"). The Northeast Bank PPP Application contained purported income data and documentation regarding Vaughn Investment Group that, if true and accurate, would have supported a loan request of $20,832. Defendant BALL-VAUGHN signed the Northeast Bank PPP Application and falsely certified that both the application and the information provided in the supporting documents were true and accurate.

24.     The information that defendant STEVEN BALL-VAUGHN caused to be submitted with the Northeast Bank PPP Application falsely represented the income of the Vaughn Investment Group. To support this false income statement, defendant BALL-VAUGHN submitted a fraudulent IRS form 1040C from the year 2019 which stated that the Vaughn Investment Group received income which would entitle it to a PPP loan in the amount of $20,832, when in fact neither the Vaughn Investment Group nor defendant BALL-VAUGHN filed a 1040C in 2019 or in any year.

25.     After the Northeast Bank PPP Application was approved, on or about April 7, 2021, defendant STEVEN BALL-VAUGHN received approximately $20,832 through a wire transfer sent to an account for Vaughn Investment Group at Navy Federal Credit Union.

26.     Between on or about April 7, 2021 AND July 1, 2021, defendant STEVEN BALL-VAUGHN caused PPP loan proceeds from the Vaughn Investment Group to be used for personal and unauthorized expenses, including on transfers to his personal checking account, on grocery stores and restaurants, purchases at a theme park, and gambling sites.

All in violation of Title 18, United States Code, Section 1344.

## COUNT TWO

### (Theft of Public Money)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

### EIDL PROGRAM

1.      On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act") (Pub. L. 116-136) became law and provided emergency assistance for individuals, families, and businesses affected by the coronavirus pandemic. The CARES Act provided multiple programs for businesses including the Economic Injury Disaster Loan ("EIDL") program. The EIDL program provided low-rate emergency loan options for struggling businesses for amounts up to $500,000. This program was administered by the Small Business Administration ("SBA"). Applications for the EIDL program were made through an online SBA portal.

2.      As part of the application progress, an applicant was required to submit information about the applicant's business. This information included, amongst other categories, the organization type of the business, gross revenues for the twelve months preceding January 31, 2020, cost of goods sold for the twelve months preceding January 31, 2020, and the number of employees working at the business.

3.      As part of the application, an applicant could also request an emergency advance of $10,000. The SBA paid this emergency advance within three days of the applicant submitting the information. To receive this advance and/or the ultimate loan, the applicant was required to enter bank account information for the advance funds and/or loan to be deposited into.

4.      Before an applicant could submit the application, the applicant was required to certify, under the penalty of perjury and laws of the United States, that the information on the application was true and correct.

9

5.      The SBA proscribed limited uses for any funds, including the emergency advance, dispersed under this program. The SBA required that the applicant only "use all proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees."

6.      On June 16, 2020, defendant STEVEN BALL-VAUGHN submitted an EIDL application which represented that the Vaughn Investment Group received $142,190 in income in the preceding 12 months and had $43,222 in costs of goods sold during that period. The application also falsely stated that the Vaughn Investment Group had 3 employees.

7.      On the application, defendant STEVEN BALL-VAUGHN requested an emergency advance from the SBA.

8.      Prior to submitting the application, defendant STEVEN BALL-VAUGHN certified that all information on the application was true and correct under the penalty of the laws of the United States and perjury.  The statements on the application were not true and correct but false as the COVID-19 pandemic did not interrupt the Vaughn Investment Group's business, the Vaughn Investment Group did not have the reported income and costs of goods sold, and the Vaughn Investment Group did not have 3 employees.

9.      On or about June 22, 2020, the SBA deposited the emergency advance of $3,000 requested on the application into the Vaughn Investment Group's account at Navy Federal Credit Union which was controlled by defendant STEVEN BALL-VAUGHN.

10.     Thereafter, from on or about June 22, 2020, to on or about July 13, 2020, defendant STEVEN BALL-VAUGHN did not spend the emergency advance funds on proper business uses as required under the application submitted to the SBA. Rather, defendant BALL-VAUGHN spent the emergency advance funds on personal goods and items including expenditures at grocery stores

and restaurants, for Amazon purchases and video game purchases.

11.     From on or about, June 16, 2020, and continuing to on or about, July 13, 2020,

in the Eastern District of Pennsylvania, and elsewhere, defendant,

**STEVEN BALL-VAUGHN**

did knowingly steal and convert to his use or the use of another, money or a thing of value of the

United States, specifically, Economic Injury Disaster Loan funds under the care of the United States

Small Business Administration.

All in violation of Title 18, United States Code, Section 641.

11

## COUNT THREE

### (Theft of Public Money)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 5 of Count Two are incorporated herein.

2.      On June 25, 2020, defendant STEVEN BALL-VAUGHN submitted an EIDL application under his own name which represented that he was in the business activity of real estate development and had 10 employees. Defendant BALL-VAUGHN also falsely reported that he had $55,000 in income in the preceding 12 months and 11,000 in costs of goods sold.

3.      In the application, defendant STEVEN BALL-VAUGHN requested an emergency advance from the SBA.

4.      Prior to submitting the application, defendant STEVEN BALL-VAUGHN certified that all information on the application was true and correct under the penalty of the laws of the United States and perjury.  The statements on the application were not true and correct but false as the COVID-19 pandemic did not interrupt defendant BALL-VAUGHN's business, defendant BALL-VAUGHN did not have the reported income and costs of goods sold, and defendant BALL-VAUGHN did not have 10 employees.

5.      On or about June 30, 2020, the SBA deposited the emergency advance of $10,000 requested on the application into defendant STEVEN BALL-VAUGHN's personal account at Navy Federal Credit Union.

6.      Thereafter, from on or about June 30, 2020, to on or about August 5, 2020, defendant STEVEN BALL-VAUGHN did not spend the emergency advance on proper business uses as required under the application by the SBA. Rather, defendant BALL-VAUGHN spent the remaining the emergency advance on personal goods and items including at grocery stores and restaurants, pet stores, shoe stores, and on Amazon purchases.

7.      From on or about, June 25, 2020 continuing through to, on or about, August 5, 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant,

**STEVEN BALL-VAUGHN**

did knowingly steal and convert to his use or the use of another, money or a thing of value of the United States, specifically, Economic Injury Disaster Loan funds under the care of the United States' Small Business Administration.

All in violation of Title 18, United States Code, Section 641.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

As a result of the violations of Title 18, United States Code, Sections 1344 and 641, set forth in this indictment, defendant

## STEVEN BALL-VAUGHN

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds obtained directly or indirectly as a result of the commission of such offenses, including but not limited to $75,283.00 in United States currency.

If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred to, sold to, or deposited with a third party;

      c.      has been placed beyond the jurisdiction of this Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL:

███████████

FOREPERSON

JENNIFER ARBITTIER WILLIAMS
United States Attorney

No. ------- ´

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

STEVEN BALL-VAUGHN

INDICTMENT

Counts

18 U.S.C. § 1344 (bank fraud – 1 count) 18 U.S.C. § 641 (theft of government money – 2 counts) Notice of forfeiture



Filed in open court this _____ day,

Of _____ A.D. 20_____

_____
Clerk

Bail, $ _____